UNITED STATES of America,
Plaintiff-Appellee,

v.

Luther Earl PHILLIPS,
Defendant-Appellant.

No. 77–5535
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 23, 1978.

John H. Miller, Jr., William G. Burnett, Sinton, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., George A. Kelt, Jr., Asst. U. S. Atty., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., James R. Gough, John M. Potter, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

PER CURIAM:

Luther Earl Phillips appeals from his conviction for possession of a firearm not identified by a serial number, in violation of 26 U.S.C. §§ 5861(i) and 5871. We affirm.

On July 12, 1976, Phillips was arrested by San Patrico County, Texas law enforcement officers, and charged with several Texas state offenses, including possession of a prohibited weapon, to wit: a sawed off shotgun. On July 14, 1976, Phillips was released from state custody on bail bond. At sometime between July 12 and July 21, 1976, Tom Bridges, an Assistant District Attorney for San Patrico County telephoned the San Antonio office of the Alcohol, Tobacco and Firearms Bureau of the United States Treasury Department ["ATF"]. Bridges informed an ATF agent that Phillips had been in possession of a sawed off shotgun at the time of his state arrest.

Bennie Davis, a Special Agent of ATF, while in Bridges' office for an unrelated matter on July 21, 1976, was told of Phillips' case by Bridges, and asked if the federal government would be interested in the case. Davis was given a copy of the offense report which was then mailed to the resident ATF agent in Corpus Christi, Texas. Davis conducted no investigation of any federal offense with regard to Phillips, but he did discuss the case "very briefly" with an Assistant United States Attorney on the same day as his meeting with Bridges.

Robert Bailey, ATF resident agent in Corpus Christi, received the copy of the offense report on July 30, 1976. On August 16, 1976, Bailey conferred with Bridges and test fired the weapon. Bailey filed his report with the Houston office of the ATF on August 20, 1976. In Houston, the case was examined, approved, and recommended for prosecution by the Special Agent-in-Charge. It was then forwarded to the United States Attorney shortly after its August 20th filing date.

On May 16, 1977, Phillips was indicted on federal charges of unlawful possession of a firearm in violation of 26 U.S.C. §§ 5861(d) and 5871 [Count One], and unlawful possession of an unidentified firearm in violation of 26 U.S.C. §§ 5861(i) and 5871. Phillips was taken into federal custody on June 3, 1977, and released the same day on bond.

On July 6, 1977, Phillips was convicted on Count Two of the indictment and sentenced to five years' imprisonment.[1] The San Patrico District Attorney's Office had not presented Phillips' case to a state grand jury because Assistant District Attorney Bridges had expected federal charges to be brought on the weapon offense.

■ Phillips contends that his arrest on July 12, 1976, by the San Patrico County law enforcement officers constituted an "arrest" within the meaning of 18 U.S.C. § 3161(b) of the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq., and that the failure to indict him within thirty days of arrest, as required by that subsection, mandated dismissal of the indictment.

While the Act establishes a comprehensive set of time limits designed to assure speedy trials, 18 U.S.C. § 3161, and establishes sanctions for violations of the time limits, 18 U.S.C. § 3162, Phillips has not realized that except for "custody" and "high risk" offenders, 18 U.S.C. §§ 3164(b), (c), the sanctions do not become effective until July 1, 1979. 18 U.S.C. § 3163(c). See United States v. Bullock, 5 Cir. 1977, 551 F.2d 1377. Phillips was neither classified as "high risk," nor was he in custody pending trial. Consideration of Phillips' claim is therefore made not under the Act, but rather under the transitional plan, see 18 U.S.C. § 3165, adopted by the Southern District of Texas, and designed to implement the speedy trial goals of the Act over the three year period ending June 30, 1979. See United States v. Strand, 5 Cir. 1978, 566 F.2d 530; United States v. Bullock, supra. The district court's plan is a binding rule of

---

1. The government was unprepared at the trial to present evidence on Count One, and it was therefore dismissed by the district court.

court, generated by, but not the same as, the Act.

Rule 3(a) of the Plan for the United States District Court for the Southern District of Texas for Achieving Prompt Disposition of Criminal Cases [effective June 30, 1976] provides, in pertinent part, that an indictment must be filed within sixty days of arrest or service of a summons where the arrest or service occurs on or after July 1, 1976, but before July 1, 1977. Except for certain classifications of defendants not relevant to the case at bar, failure to comply with the time limits prescribed by the Plan "shall not require dismissal of the prosecution." Rule 10(e) of the Plan for the Southern District of Texas.

In *United States v. Mejias*, 2 Cir. 1977, 552 F.2d 435, the defendants therein argued that because of the cooperation between federal and state authorities in the investigation and prosecution of their case, evidenced by the presence of federal agents at each of two state arrests, the federal government should be charged with the dates of the state arrests for purposes of the district court's "Interim Plan Pursuant to the Provisions of the Speedy Trial Act of 1974." The Second Circuit held that to accept the defendants' argument would require the rejection of the doctrine of dual sovereignty, as formulated by the Supreme Court in *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), and reaffirmed in *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). *Id.* at 441. This doctrine recognized that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible. The *Mejias* court also pointed out that to charge the federal government with the dates of the state arrests would be to force immediate federal indictments and trials of state arrestees in joint jurisdiction cases, thereby crowding the federal court calendar in contravention of the purpose of the Speedy Trial Act. We find the reasoning of our sister Circuit to be most compelling. Furthermore, there was no federal participation in Phillips' state arrest. The federal government should not be faulted for the failure of state officials to bring the charges before a state grand jury.

The defendants in *Mejias* relied upon *United States v. Cabral*, 1 Cir. 1973, 475 F.2d 715, as does Phillips in the case at bar. *Cabral* held that the Sixth Amendment speedy trial right of a defendant convicted of a federal firearms charge "crystallized" at the time of his state arrest for possession of the illegal firearm. The government's prosecution was viewed as having been initiated three days after the state arrest when state authorities turned over the weapon to a federal officer. A fifteen month time period which elapsed between the state arrest and the return of the federal indictment was counted in deciding whether the defendant was denied a speedy trial. The conviction was affirmed, however, due to the failure of the defendant to demonstrate any actual prejudice resulting from the delay.

*Cabral* is clearly distinguishable from the instant case. As noted by the district court in the *Mejias* case, *Cabral* was not decided pursuant to a Circuit or District Court rule providing for trial within a fixed period of time. Rather, the *Cabral* court addressed itself to broader Sixth Amendment doctrine. *See United States v. Mejias*, 417 F.Supp. 585 (S.D.N.Y.1976).

We find no basis for adopting the date of Phillips' state arrest as the commencement point for the time limits of the Plan for the Southern District of Texas. In fact, the use of a state arrest to trigger the time limits the Plan would appear to contravene the purposes for which the Plan was implemented. In any event, the failure to abide by the time limits of the Plan does not necessarily mandate dismissal of a case. We conclude that the trial court did not err in denying Phillips' motion to quash the indictment. Accordingly, the conviction is AFFIRMED.