985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Rodger BELKNAP, Defendant-Appellant.
 No. 92-5363.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 3, 1992
Decided: February 10, 1993
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert Earl Maxwell, Chief District Judge. (CR-91-93)
 Argued: Roger Daniel Forman, Forman & Crane, Charleston, West Virginia, for Appellant.
 Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 On Brief: William A. Kolibash, United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Rodger Belknap challenges on several grounds his conviction for manufacturing marijuana, see 21 U.S.C. § 841(a)(1). We find no error, and therefore affirm.
 
 I.
 
 2
 In March 1990, Trooper C.W. Jackson of the West Virginia State Police learned from the Drug Enforcement Administration of Belknap's purchase of indoor growing equipment. See J.A. at 219-20. Jackson subpoenaed Belknap's electric power records and discovered a significant increase in power usage. See id . at 220-22. Jackson also learned that Belknap was an open advocate of the legalization of marijuana. See id. at 171-72, 223. After a fellow officer flying over Belknap's property in a helicopter saw what he believed to be marijuana growing on the ground, Jackson joined a second such flight. See id. at 172-76, 224-26. Instructing the pilot to land near the plants, the officers saw Belknap step out onto the porch, look at the helicopter, and run back into the house. See id. at 176-77, 226-28. Upon landing, the officers caught Belknap trying to climb out of a rear window while stuffing marijuana buds into his mouth. See id. at 177-78, 22930. After securing a search warrant from a county magistrate, Jackson searched the house and found a room with electric growing equipment and fifty-six marijuana plants. See id. at 183-84, 231-43.
 
 
 3
 On August 14, 1991, a federal grand jury indicted Belknap of manufacturing marijuana, see 21 U.S.C. § 841(a)(1). On October 15, 1991, Belknap moved for discovery of information that the West Virginia State Police had obtained about his purchase of the growing equipment and to suppress the evidence seized from his house. A magistrate-judge denied both motions, and the district court affirmed. A jury convicted Belknap on February 20, 1992.
 
 II.
 
 4
 Challenging the denial of his suppression motion, Belknap argues that the police procurement of the information regarding his purchase of the indoor growing equipment violated his Fourth Amendment "privacy" interest and that no probable cause can stem from that legal purchase. See Appellant's Br. at 3-8.
 
 
 5
 Both arguments are without merit and unsupported by any authority cited by Belknap.[1] Belknap cannot claim a "legitimate expectation of privacy" in the customer records of the company that sold him the equipment; Fourth Amendment standing requires an expectation of privacy not simply in the item found but in the area searched. See United States v. Salvucci, 448 U.S. 83, 90-93 (1980); Rawlings v. Kentucky, 448 U.S. 98, 104-06 (1980). Moreover, the county magistrate issued the warrant based not simply on Belknap's purchase of the growing equipment but on the purchase of the equipment in conjunction with the significant power surge, Belknap's open advocacy of the legalization of marijuana, the aerial surveillance, and Belknap's attempt to flee while stuffing marijuana buds into his mouth. Under the "totality of the circumstances," we cannot conclude that the magistrate lacked a substantial basis for finding probable cause to issue the warrant. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983). We therefore affirm the district court's denial of Belknap's motion to suppress the evidence obtained pursuant to that warrant.
 
 III.
 
 6
 Belknap also argues that "the police, not the prosecutors, elected to pursue this case in Federal Court in an arbitrary manner solely to enhance penalties. This violates due process of law." Appellant's Br. at 8. As evidence that he is the victim of selective prosecution, he points out that the state search warrant issued almost one year before the federal grand jury indicted him, and suggests that the inaction by state officials during that period shows that the Government only pursued the case as "an unwittingly rubber stamp for wily police officials." Id. at 9.
 
 
 7
 Belknap never raised the issue of selective prosecution below and is barred, therefore, from raising that issue on appeal. " 'It is an accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken.' " United States v. Davis, 954 F.2d 182, 187 (4th Cir. 1992) (citation omitted).[2]
 
 IV.
 
 8
 Belknap also contends that his trial counsel's performance violated his Sixth Amendment right to effective assistance of counsel. This argument is premature and should be raised instead by motion under 28 U.S.C. § 2255, for he has made no showing that ineffectiveness "conclusively appears" from the trial record itself. See United States v. Fisher, 477 F.2d 300, 302 (4th Cir. 1973); accord United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992).[3]
 
 V.
 
 9
 Finally, Belknap argues that the district court erred in refusing to instruct the jury on his "medical necessity" defense: namely, that the jury could acquit him if it believed that "[s]moking marijuana and violating the law was a lesser evil than the alternatives available to the defendant," that he avoided "the greater evil," and that he "had no reasonable legal alternative to violating the law." See Appellant's Br. at 13 (quoting requested instruction). We disagree.
 
 
 10
 Courts have rejected requests for such instructions, see United States v. Griffin, 909 F.2d 1222, 1224 (8th Cir. 1990) (rejecting "necessity" defense to heroin possession), cert. denied, 111 S. Ct. 708 (1991); United States v. Burton, 894 F.2d 188, 191 (6th Cir.) (rejecting "medical necessity" defense to growing, possessing, and using marijuana), cert. denied, 111 S. Ct. 157 (1990), and Belknap cites no federal case in which such an instruction was even given, much less approved on appeal. He did not, in any event, offer sufficient evidence to support such an instruction because he failed to show that his alternatives were limited in the way that he contends. While he claimed that he consumed marijuana to relieve pain and to help overcome a previous drug and alcohol addiction, see J.A. at 405-06, 41415, he conceded at trial that he had refused to try legal pain relievers like Tylenol or aspirin and that he had never tried to treat his addiction through alternative, legal means. See id . at 421, 441-42. With no legal or factual basis for a "medical necessity" instruction before it, the district court properly rejected Belknap's request.
 
 CONCLUSION
 
 11
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 Indeed, Belknap appears to concede as much. He argues that "[t]he law, not Mr. Belknap, is wrong," and that "[t]his Court should reverse because when the law is wrong it should be changed." Appellant's Br. at 17-18. We decline this invitation, of course, as we decline his suggestion, at argument, that we could "get around" the Supreme Court's Fourth Amendment jurisprudence
 
 
 [2]
 In any event, his argument is meritless. " 'In the absence of proof that the choice of forum was improperly motivated or based on an impermissible classification as a matter of constitutional law,' prosecution in a federal rather than a state court does not violate due process...." United States v. Williams, 963 F.2d 1337, 1342 (10th Cir. 1992) (citations omitted). Belknap has alleged no discriminatory motive, and the consideration of the higher federal penalties is not, by itself, improper. See United States v. Andersen, 940 F.2d 593, 596 (10th Cir. 1991). The only case that Belknap cites in support of his position is United States v. Williams, 746 F. Supp. 1076 (D. Utah 1990). He treats this decision as "[t]he leading authority on the unconstitutionality of pursuing a federal remedy when there was also a state remedy," Appellant's Br. at 8, despite the fact that, as he concedes, that part of Williams was held erroneous by the Tenth Circuit, see 963 F.2d 1337, 1342 (10th Cir. 1992), and rejected by the Fifth and Sixth Circuits. See United States v. Carter, 953 F.2d 1449, 1461-62 (5th Cir.), cert. denied, 112 S. Ct. 2980 (1992); United States v. Allen, 954 F.2d 1160, 1165-66 (6th Cir. 1992); see also United States v. Beede, 974 F.2d 948, 952-53 (8th Cir. 1992), petition for cert. filed, No. 92-6658 (U.S. Nov. 17, 1992); United States v. Nance, 962 F.2d 860, 864-65 (9th Cir. 1992) ( per curiam); United States v. Goodapple, 958 F.2d 1402, 1410-11 (7th Cir. 1992); United States v. 6350 35 9 Parson, 955 F.2d 858, 873-74 n.22 (3d Cir. 1992)
 
 
 [3]
 Belknap's allegations of ineffectiveness lack record support. His primary concern with trial counsel's performance is that the attorney failed to call certain experts and to admit certain exhibits which, he asserts, would have supported his "medical necessity" defense. Belknap did, however, enjoy the testimony of other experts, see J.A. at 308-63, 452-84, and lay witnesses, see id. at 364-86, on this defense. Belknap has not shown both (1) that counsel's performance fell below an objective standard of reasonableness and (2) that a reasonable probability exists that but for the errors the result would have been different. See Strickland v. Washington, 466 U.S. 668, 687-96 (1984)